[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/25/99
THOMAS  K. KAHN
CLERK

No. 98-9362

D. C. Docket No. 4:95-CV-029-RLV

ROBERT A. SUTTON,

Plaintiff-Appellee,

versus

PHILIP LADER, Administrator of the
Small Business Administration,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(August 25, 1999)**

Before CARNES, Circuit Judge, HILL, Senior Circuit Judge, and HOEVELER*,
District Judge.

*Honorable William M. Hoeveler, Senior U. S. District Judge for the Southern District of
Florida, sitting by designation.

 HILL, Senior Circuit Judge:

Robert A. Sutton sued the Administrator of the Small Business Administration under the Rehabilitation Act, 29 U.S.C. §§ 704 – 794e alleging disability discrimination. The district court entered judgment for plaintiff on his claim for back pay and awarded him $15,394.10 in back pay and $109,752 in attorneys' fees. Defendant appeals both awards.

I.

On February 2, 1994, the Small Business Administration Disaster Assistance Program (SBA) hired Robert A. Sutton to work as a disaster relief construction analyst on a thirty-day appointment[1] to Northridge, California, the site of a powerful earthquake causing extensive damage. The job involved assessing the earthquake damage and the needs of disaster victims. It is physically demanding – requiring climbing and crawling inside collapsed buildings and other debris under disaster conditions and exposure to chemicals, fumes and dust.[2]

---

[1]Because disasters cannot be predicted, the SBA has special authority to hire temporary disaster relief workers on thirty-day appointments. The SBA employed more than 1,000 temporary employees to respond to the Northridge earthquake. The temporary appointments are often renewed on thirty-day increments, depending upon the program workload and each worker's performance. As a disaster relief effort winds down, the SBA reduces its staff of temporary workers as quickly as possible to reduce its costs.

[2]The Northridge earthquake disaster site had so much dust that many disaster relief workers developed respiratory problems.

Sutton left for California on February 4, 1994. Unfortunately, he suffered a heart attack that night. He was hospitalized and underwent an angioplasty the next day. He was released from the hospital four days later, on February 10. Due to these circumstances, Sutton was unable to begin his on-site training, or perform any duties as a construction analyst.

Five days later, on February 15, Sutton contacted his supervisor to discuss his return to work. He was advised that he would need a medical release before the SBA could permit him to return to the physically demanding duties of construction analyst.

The next day, February 16, Sutton had a second heart attack. He had bypass surgery on February 18, and remained hospitalized for six more days. When his SBA supervisor did not hear from him, he called to inquire and learned of the second attack and the surgery. Sutton told him he was ready to return to work, and his supervisor reiterated that a medical release to work specifically as a construction analyst would be necessary.

On February 28, 1994, ten days after his bypass surgery, Sutton provided the SBA with a letter from a Dr. J. Nathan Rubin stating that Sutton would be totally disabled from February 3 through March 10, 1994, and "partially disabled" from March 19 to April 1, 1994. The letter stated that Sutton could not lift, carry, climb,

climb ladders or work around dust. The letter further stated that Sutton could kneel, bend, stoop, twist, and push and pull for only one hour a day, and that he should not be exposed to chemicals, solvents, and fumes for more than one hour each day. At trial, Sutton conceded that the doctor who wrote the letter was unaware of the duties of a construction analyst.

Shortly thereafter, Sutton visited the SBA offices in California to discuss his employment. He was informed that since he could not perform the duties of a construction analyst, the SBA would allow his temporary appointment to expire, but would extend it one week to March 12 so that he could return to Atlanta at SBA expense. He was told that if he wanted to be reappointed as a construction analyst, he would have to provide the SBA with a letter that specifically permitted him to perform those duties.

On March 29, seventeen days after his return from California, Sutton consulted a cardiologist, Dr. Martin, and secured a letter stating that Sutton could return "to his professional duties." This doctor later testified that Sutton did not inform him of the nature of these "professional duties." The doctor also testified that his letter did not release Sutton to perform the duties of a construction analyst.

Nine days later, Sutton did inform the cardiologist of those duties and asked him to write a new letter releasing Sutton to work as a construction analyst. The doctor refused to do so without a stress test and full examination.

On May 4, 1994, Sutton submitted a letter from a third cardiologist, Dr. Dale Haggman, which effectively released him to perform the duties of a construction analyst. On that date, however, the SBA was no longer hiring construction analysts for the Northridge earthquake disaster, or any other disaster.[3] The Atlanta office did not hire construction analysts again until July when floods in south Georgia caused by tropical storm Alberto necessitated additional construction analysts. The SBA telephoned Sutton and offered him a new thirty-day appointment as a construction analyst, but he declined because he had decided to open a remodeling business in the Chattanooga area.

Sutton sued the SBA in January of 1995under the Rehabilitation Act claiming back pay for employment discrimination, front pay and overtime pay for constructive discharge, and compensatory damages. During the four day trial in late 1997, Sutton expressed surprise during his cross-examination regarding the demand for front pay, and abandoned that claim. After the close of evidence, the

---

[3]The Atlanta office stopped hiring construction analysts and sending them to California in April. Sutton never applied for any other position.

district court granted the SBA's motion to dismiss the compensatory damages claim for lack of evidence. The court, however, deferred ruling on the SBA's motion for judgment as a matter of law on the remaining back pay claim.[4]

On August 28, 1998, the district court denied the motion and entered judgment for Sutton, holding that the SBA did not allow him to return to work because it perceived him to be disabled between March 7, 1994, and July 9, 1994, when he was offered another position but refused it. The court awarded Sutton back pay for this period of time in the amount of $15,394.10. The court also granted Sutton's motion for attorneys' fees although it noted that his affidavit made it impossible for the court to determine the amount of time devoted by his attorneys to the sole issue on which he prevailed. The court also noted that the staffing on the case was "clearly excessive" (six attorneys and six paralegals) and that work on the constructive discharge claim could have been avoided if the attorneys had "simply conferred with their client." Despite these defects, the court awarded $109,752 in fees as "a compromise."

_____

[4]The jury was dismissed after the SBA advised the district court that Sutton was not entitled to a jury trial on his sole remaining back pay claim. Later, it was determined that this advice was in error, but the SBA was deemed to have waived the jury by virtue of the advice, and the error was held harmless as to Sutton because he prevailed on the claim.

We review the SBA's appeal of the denial of its motion for judgment as a matter of law *de novo*, applying the same legal standards as the district court. *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 & 915 (11th Cir. 1996).

## II.

The Rehabilitation Act (the Act) prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability. 29 U.S.C. § 791. To establish a prima facie case of discrimination under the Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability. *E. L. Hamm & Assocs.,* 100 F.3d at 910;[5] *Severino v. North Fort Myers Fire Control Dist.,* 935 F.2d 1179, 1183 (11th Cir. 1991).

The Act defines "individual with a disability" as any person who:

(I) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment.

---

[5]The plaintiff in *E.L. Hamm & Associates* brought his claim under the American with Disabilities Act (ADA). The standard for determining liability under the Rehabilitation Act is the same as that under the ADA. 100 F.3d at 911 (using EEOC Rehabilitation Act regulations to determine ADA disability). *See also Allison v. Dept of Corrections*, 94 F.3d 494, 497 (8th Cir. 1996); *McDonald v. Pennsylvania Dept of Public Welfare*, 62 F.3d 92, 94-95 (3d Cir. 1995).

29 U.S.C. § 706(8)(B). Sutton claims that the SBA "regarded" him as having a physical impairment and discriminated against him by refusing to allow him to return to his job as a construction analyst for that reason.

A person is "regarded' as having an impairment if he:

has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or [has no physical or mental impairment] but is treated by an employer has having such an impairment.

29 C. F. R. § 1614.203(a)(5).

In holding that the SBA wrongfully terminated Sutton, the district court said only:

It is undisputed that the SBA did not allow the plaintiff to return to work after his heart attacks; furthermore, from the evidence adduced at trial, it is clear that the SBA's decision not to allow the plaintiff to return to work, even though he had obtained medical releases, was based upon the SBA's perception that the plaintiff could not do the work because of his heart attacks.

The district court apparently found that Sutton had no physical impairment, but was treated by the SBA as though he did when it refused to allow him to return to work prior to the expiration of his temporary appointment. We disagree.

8

III.

In order for Sutton to prevail on a "perception" theory under the Act, he must be able to show that the SBA refused to allow him to return to work because it regarded him as having a physical impairment *as that term is defined by the Act. E. L. Hamm & Associates*, 100 F.3d at 913. Not every physical impairment is a disability under the Act. *Hilburn v. Murata Electronics N. A., Inc.*, No. 98-9313, slip. op at 3279 (11th Cir. July 20,1999) (citing *Pritchard v Southern Co. Servs.* 92 F.3d 11130, 1132 (11th Cir.), *amended in part on reh'g by* 102 F.3d 1118 (11th Cir. 1996). Thus, in order for a plaintiff to prevail on a perception theory of disability discrimination, he must be able to show that, as with a real impairment, the perceived impairment is "substantially limiting" and significant. *Id.*; *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998). *See also Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 191 (5th Cir. 1996).[6] In determining whether a physical impairment substantially limits a major life activity, the

---

[6]Sutton argues that the extent to which the SBA regarded him as impaired is irrelevant under a perception theory of disability discrimination. This reading of the Act is, of course, wrong as it would expand the Act to cover any impairment at all, so long as the employer knew of it. Under this theory, "a person in a group protected from adverse employment actions, i.e., anyone, could establish a *prima facie* discrimination case merely by demonstrating some adverse action against the individual and that the employer was aware that the employee's characteristic placed him or her in the group, *e.g.*, race, age, or sex [or disabled]." *Kelly v. Drexel University*, 94 F.3d 102, 109 (3rd Cir. 1996).

regulations instruct us to consider (1) the nature and severity of the impairment; (2) the *duration or expected duration of the impairment*; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 20 C.F.R. § 1630.2(j)(2) (emphasis supplied).

The district court did not find that the SBA perceived Sutton to have a substantially limiting and significant physical impairment. We do not remand for such a finding, however, because we conclude that there is insufficient evidence in this record upon which such a finding could be made.

From the evidence, it is abundantly clear that the SBA perceived Sutton to have only a temporary incapacity to perform the essential functions of his job as a construction analyst. The evidence demonstrated that the SBA knew Sutton had had heart surgery and that it regarded Sutton as temporarily unable to work during his recovery. Sutton submitted a letter from his own doctor, Dr. Rubin, stating that Sutton would be totally disabled until March 10, and partially disabled until April 1, 1994 (after the expiration of Sutton's thirty-day appointment). Dr. Rubin specifically stated that during this period of time Sutton could not lift, carry, climb, climb ladders or work around dust. Dr. Rubin further stated that Sutton could kneel, bend, stoop, twist, and push and pull for only one hour each day, and he

10

should be exposed to chemicals, solvents, and fumes for less than one hour each day.

This evidence, however, is insufficient to demonstrate that the SBA regarded Sutton as disabled. *Kelly v. Drexel University*, 94 F.3d 102, 109 (3rd Cir. 1996). The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled. An employee who is perceived by his employer as having only a temporary incapacity to perform the essential functions of his job is not perceived as "disabled" as defined by the Act. 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities"); *Huff v. UARCO, Inc.*, 122 F.3d 374 (7th Cir. 1977) (temporary condition not disability under the Act); *Sanders v. Arneson Products, Inc.* 91 F.3d 1351, 1354 (9th Cir. 1996) (plaintiff's four-month temporary impairment was too brief to be a "disability"); *Vande Zande v. Wisconsin Dep't of Administration*, 44 F.3d 538, 544 (7th Cir. 1995) ("intermittent, episodic impairments are not disabilities"); *Evans v. City of Dallas*, 861 F.2d 846, 852-53 (5th Cir. 1988) (knee injury not a disability).

To establish that an employer regarded an employee as "disabled" and thus covered by the Rehabilitation Act, a plaintiff must first introduce substantial

evidence that the employer regarded him as having a permanent or long-term impairment. *E.L. Hamm & Associates*, 100 F.3d at 912-13. A temporary inability to work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act. *Gutridge v. Clure*, 153 F.3d 898, 901-02 (8th Cir. 1998) (citations omitted); *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997) (inability to work while recovering from surgery not evidence of permanent impairment); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (surgery and recovery not a disability); *McDonald v. Pennsylvania, Dep't of Public Welfare*, 62 F.3d 92, 96-97 (3d Cir. 1995) (recuperation after abdominal surgery not disability); *Evans*, 861 F.2d at 852-53 (knee injury that required surgery not disability).

Nor does an employer's perception that an employee cannot perform a particular task safely establish that the employer regarded the employee as disabled. *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993). The evidence was that the SBA prevented Sutton from returning to work until he submitted a valid medical release out of concern for his safety. There was no evidence that the SBA tried to prevent Sutton from returning to work after he submitted the doctor's letter that effectively released him to return to the specific

duties of a construction analyst.  In fact, the SBA offered him employment which he refused.

Furthermore, in order to establish a prima facie case, Sutton must have demonstrated that he was "otherwise qualified" do his job during the relevant time frame.  In the employment context, an otherwise qualified person is one who can perform 'the essential functions' of the job in question with or without reasonable accommodation." 29 C. F. R. § 1630.2(m); *School Board of Nassau County v. Arline*, 480 U.S. 273, 275 (1987).  The district court in this case, however, made no finding that Sutton was able to "perform the essential functions" of the job of SBA construction analyst during the relevant time frame.  and we conclude that no such finding can be made on the evidence in this record.

The evidence at trial was that, during his thirty-day appointment, Sutton was unable to perform the essential functions of his job.  Although Sutton submitted three documents to the SBA which purported to release him for work, only the last of these effectively released him to return to the specific physical demands of the position of construction analyst.

The first document Sutton submitted was from Dr. Nathan Rubin.  Dr. Rubin certified that Sutton would be totally disabled until March 10, and partially disabled until April 1, 1994 (after the expiration of Sutton's thirty-day

13

appointment). Dr. Rubin specifically stated that Sutton could not lift, carry, climb, climb ladders or work around dust. Dr. Rubin further stated that Sutton could kneel, bend, stoop, twist, and push and pull for only one hour each day, and he should be exposed to chemicals, solvents, and fumes for less than one hour each day. Sutton conceded at trial that this letter did not indicate in any way that Dr. Rubin was aware of the duties of a construction analyst. The evidence at trial was that no one could work as a construction analyst under the restrictions Dr. Rubin placed on Sutton in this letter. This letter did not, therefore, effectively "release" Sutton to return to work as a construction analyst and the SBA was under no obligation to allow him to do so. In fact, it would have been callously indifferent to his welfare had it done so.

The second doctor's letter Sutton submitted also did not effectively release him for work. In this letter, Dr. Martin merely stated that Sutton could return "to his professional duties." In view of Dr. Rubin's letter which imposed severe limitations on Sutton's ability to perform any physical activity, the SBA was fully justified in requiring a letter which stated that Sutton was capable of returning to the specific strenuous duties of a construction analyst. In fact, Dr. Martin later

14

testified that he knew nothing of the duties of a construction analyst and his letter did not release Sutton to return to such a job.[7]

It was not until May 4 that Sutton finally submitted an effective release to return to the position of construction analyst.[8]  However, by then the Northridge earthquake disaster was resolved and the SBA was no longer hiring construction analysts.  The SBA is under no obligation to hire an employee for a non-existent job.  *Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir. 1996) ("employers are not required to create positions specifically for the handicapped employee").  When, in July, another disaster prompted the SBA to begin hiring construction analysts again, Sutton refused the position.

There is no obligation under the Act to employ people who are not capable of performing the duties of the employment to which they aspire.  *Carter v. Tisch*, 822 F.2d 465, 467 (4th Cir. 1987) (Rehabilitation Act permits employer to release a disabled or injured employee who cannot perform all of his duties);  *Southeastern*

---

[7]Dr. Martin testified that he thought Sutton had a "regular type of job, 40 hours a week, no excessive stresses, no exposure to any risk factors to endanger his condition."

[8]Sutton argues on appeal that the SBA should have contacted the doctors who wrote the prior letters.  Sutton, however, objected at trial to the SBA's attempt to introduce evidence that one of its personnel officers had, in fact, spoken with Dr. Rubin and to the contents of that discussion.

15

*Community College v. Davis*, 442 U.S. 397 (1979) (Rehabilitation Act does not require employer to change job requirements or ignore the fact that the plaintiff could not perform them).

Sutton counters this evidence with an argument that the SBA was under an obligation to "accommodate" him by placing him in a supervisory position until he was able to work as a construction analyst. Sutton, however, conceded at trial that he never completed the training for the position of construction analyst, had never worked as a construction analyst, and had never assessed any earthquake damage, nor had any experience or background in disaster relief work. Under these circumstances, the SBA was under no obligation to return Sutton to work in a position for which he was not qualified.

Finally, Sutton argues that the SBA could have allowed him to return to work as a construction analyst but given him some sort of "light duty." The evidence was undisputed, however, that there are no "light duty" construction analyst positions at the SBA. Nor is the SBA required to create such a position for Sutton. *Shiring,* 90 F.3d at 831 ("employers are not required to create positions specifically for the handicapped employee"); *Fedro v. Reno,* 21 F.3d 1391, 1395 & n. 5 (7th Cir. 1994) (Rehabilitation Act does not "require an employer to *create* alternative employment opportunities for a handicapped employee") (emphasis in

16

original); *Davis*, 442 U.S. at 406 (Rehabilitation Act does not require employer to change job requirements).[9]

IV.

Sutton has failed to make a prima facie case of employment discrimination under the Rehabilitation Act because there was insufficient evidence that the SBA perceived him as a disabled person or that he was "otherwise qualified" for the position of construction analyst during the relevant time frame.  Accordingly, the judgment of the district court is REVERSED, the award of attorneys' fees is VACATED and the case is REMANDED for the entry of judgment for the defendant.

---

[9]The district court's approach to calculating attorneys' fees is unconventional at best, *see generally American Civil Liberties Union v. Barnes*, 168 F.3d 423 (11th Cir. 1999), but because of our resolution of the liability question, the attorneys' fees issues are moot.