**Robert E. CARTER, Plaintiff,**

v.

**LURLEEN B. WALLACE JUNIOR COLLEGE, Defendant.**

**No. Civ.A. 00–A–1720–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 19, 2001.

---

Joseph B. Lewis, Montgomery, AL, for plaintiff.

Charles B. Campbell, Montgomery, AL, for defendant.

ALBRITTON, Chief Judge.

## MEMORANDUM OPINION

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Defendant Lurleen B. Wallace Junior College on October 5, 2001.

The Plaintiff, Robert E. Carter ("Carter"), originally filed his Complaint in this case on December 22, 2000, bringing a claim of disability discrimination under the Americans With Disabilities Act and the Rehabilitation Act. On March 5, 2001, Carter filed a First Amended Complaint, bringing a claim of disability discrimination only under the Rehabilitation Act.

For reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

### II. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Carter was an untenured forestry instructor at Lurleen B. Wallace Junior College ("LBW") for three years. He was qualified to teach both in-field and out-of-field courses. While on the faculty at LBW, Carter earned his doctoral degree in Forestry from Auburn University. At the end of his third contract year at LBW, Carter's contract was not renewed. Had it been renewed, he would have received tenure, because renewal of a full-time faculty member's contract for a fourth year has the effect of giving the faculty member tenure. Krudop Affidavit at ¶ 7.

Carter had been evaluated previously by Victoria Kennedy, Graduate Clinician at the Auburn University Psychological Services Center and a report was signed by Kennedy and Steven D. Shapiro, Ph.D., diagnosing Carter with a DSM–IV diagnosis of Axis I: Learning Disorder not otherwise specified. Carter claims that his contract was not renewed because his employer was aware that he has a learning disability.

LBW states that the decision to non-renew Carter's contract was made by the President of LBW, Seth Hammett ("Hammett"). The recommendation of non-renewal was made by the Dean of the College, James D. Krudop ("Krudop"). In making the recommendation, Krudop cited the level of enrollment in LBW's forestry program. Neither Hammett nor Krudop was aware of Carter's learning disorder at the time the decision was made not to renew his contract. Krudop's recommendation was, however, based on the recommendation from others who were told by Carter that he had been diagnosed with a learning disorder.

Carter was supervised by Paige Davis ("Davis"), Chair of the Math/Science Division at LBW. Dr. Mike Daniel ("Daniel") was the LBW Instructional Coordinator. Carter testified in his deposition that he informed both George Showalter, the forestry department head, and Davis that he had a learning disability that impaired his ability to process information. Davis testified that she understood Carter to have a spelling disability. Davis Dep. 19:7–12. Davis had discussed Carter's disability with Daniel during Carter's last year of employment with LBW. Id. at 19:16–18. Daniel had conducted a classroom observation of Carter in November 1999 and had noted that there was "Too much reliance on notes held in hand." Plaintiff's Exhibit 18 to Daniel's Deposition. Davis recommended to Daniel that Carter's contract not be renewed. Davis stated that she based her recommendation on the recommendation of Showalter and her own observations. Davis Deposition page 28:4–7. Davis said the issues which prompted her to recommend non-renewal included the

decreased enrollment in the forestry program, and the compatibility and professionalism of Carter. *Id.* at 28:13–23. There were no disciplinary problems noted in Carter's personnel file. Krudop stated that nonrenewal had been recommended to him by Daniel and Davis because of declining enrollment. Krudop at page 27:5–16. Krudop said that in forwarding Davis' and Daniel's recommendation of non-renewal to Hammett, he endorsed the recommendation in light of the fact that enrollment had not improved. *Id.* page 26.

### III. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### IV. *DISCUSSION*

Carter claims that his contract with LBW was not renewed for a fourth year because he has a disability which falls within the protection of the Rehabilitation Act. Under the Rehabilitation Act:

> No otherwise qualified individual with a disability . . ., shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a)

LBW has moved for summary judgment on various grounds. Before the court turns to the arguments raised with regard to specific elements of Carter's claim, the court first will address LBW's argument that there can be no discrimination claim on the basis of disability because the deci-

sion maker in this case was not aware that Carter had any kind of disability.

■ Carter has argued that while the ultimate decision maker, Hammett, may have been unaware of his learning disorder, there were others within the decision making process who were aware of the disorder. Accordingly, the court will analyze this case to determine if there is evidence that the ultimate decision maker merely effectuated discrimination of a subordinate employee. *See Llampallas v. Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir.1998).

■ In the Eleventh Circuit, when a biased recommender and the actual decision maker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity. *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1331 (11th Cir.1999). A plaintiff can establish causation if the plaintiff shows that the decision maker followed a biased recommendation without making an independent investigation. *Id.* In such a case, the recommender is using the decision maker as a mere conduit, or "cat's paw" to give effect to the recommender's discriminatory animus. *Id.*

In this case, Krudop stated that he recommended to Hammett that Carter's contract not be renewed based on the recommendation he received from Davis and Daniel and because enrollment was declining. According to Krudop, the reason given to him by Davis and Daniel for recommending non-renewal was also low enrollment. The only evidence before the court is that Krudop made a recommendation to Hammett that the contract be non-renewed because of declining enrollment. While this case presents a close case of causation, because Krudop relied on the recommendation of Davis and Daniel, and they were told that Carter had some type of learning problem, the court will accept

for purposes of summary judgment that Carter's employer was aware that he had been diagnosed with a learning disorder. The court now turns to the elements of a case of discrimination on the basis of Carter's alleged disability.

Carter urges the court to apply the traditional *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework, which applies to claims under the Americans with Disabilities Act ("Act"), to this claim brought under the Rehabilitation Act. Although LBW states that it is unaware of any Rehabilitation Act cases applying this framework, LBW acknowledges that the Eleventh Circuit applies the same standards in Rehabilitation Act and ADA cases. *See Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir.2000)

Under this framework, a plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. 1089; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997).

■ In order to establish a prima facie case of a violation of § 504 of the Rehabilitation Act, a plaintiff must establish that (1) he has a disability, (2) he is otherwise qualified for the position, and (3) he was

subjected to unlawful discrimination as the result of his disability. *Sutton v. Lader*, 185 F.3d 1203 (11th Cir.1999). LBW disputes that Carter has a disability within the meaning of the Rehabilitation Act.

■ To be considered a person to whom the provisions of the Rehabilitation Act apply, a person must have a physical or mental impairment which substantially limits one or more of the person's major life activities, have a record of such impairment, or be regarded as having such an impairment. *Sutton*, 185 F.3d at 1208.

LBW first argues that Carter is not substantially limited in any major life activities. LBW argues that Carter has not shown that he is substantially limited in the major life activity of learning because he received his Ph.D. from Auburn University.

Carter does not argue that he was substantially limited in the major life activity of learning. In fact, Carter does not point to any major life activity in which he contends he was substantially limited. Instead, Carter argues that he was regarded by his employer as having a qualifying impairment. Carter states that there is circumstantial evidence that he was so regarded because Carter informed Showalter that he had a learning disorder and this was relayed to Davis. Carter also states that Daniel, an instructional coordinator, noted that Carter relied too heavily on his notes in his lecture. Carter states that he informed Daniel that he relied on his notes because of his learning disorder. Carter argues, therefore, that the remarks made by Daniel were causally connected to Carter's non-renewal.

■ The entire basis of Carter's opposition to summary judgment appears to be that he had a learning disorder, that his employer was aware of this disorder, that his employer commented in a critical manner on behavior attributable to this disorder, and that Carter's contract was not renewed. Even accepting each of these facts as true, these facts are not sufficient to establish that Carter was disabled within the meaning of the Rehabilitation Act. The mere fact that an employer knows a person has a disability does not mean that the employee is regarded as having an impairment within the meaning of the Rehabilitation Act. *Sutton*, 185 F.3d at 1209.

■ In *Sutton*, Eleventh Circuit discussed in depth the "regarded as" element of Rehabilitation Act analysis. A person is regarded as having an impairment if he:

> has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment, or [has no physical or mental impairment] but is treated by an employer has having such an impairment.

*Sutton*, 185 F.3d at 1208 (quoting 29 C.F.R. § 1614.203(a)(5)); see also 34 C.F.R. § 104.3(j)(2)(iv). The Eleventh Circuit has stated that in order to prevail on the "regarded as" theory under the Rehabilitation Act, a plaintiff must show that the employer acted because it regarded him as having a physical impairment as that term is defined by the Rehabilitation Act. *Sutton*, 185 F.3d at 1208. Therefore, a plaintiff must show that the perceived impairment is substantially limiting and significant. *Id.*

Carter has argued that *Sutton* does not govern this case because the disability in *Sutton* was temporary in nature, and the Eleventh Circuit was only addressing whether the disability of which the employer was aware had to be more than temporary in nature to constitute a covered impairment. While Carter has argued that *Sutton's* discussion must be lim-

ited to its facts, *Sutton's* discussion is not so confined. Furthermore, the requirement that the employee be regarded as being limited in a major life activity is consistent with United States Supreme Court's interpretation of the "regarded as" analysis under the ADA.

██ The Supreme Court has held that a person is "regarded as" disabled if the employer "mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 521–22, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). An employment decision based on an impairment, whether real or imagined, only violates the law if the impairment is regarded as substantially limiting a major life activity. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 490, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (hereinafter referred to as *"United Airlines"*). The Supreme Court has explained under the ADA, just as an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment are preferable, an employer is free to decide that "some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Id.* at 491, 119 S.Ct. 2139. A plaintiff's burden on summary judgment is to create a question of fact as to whether he "is regarded as substantially limited in one or more major life activities." *Murphy*, 527 U.S. at 523, 119 S.Ct. 2133.

In this case, Carter has not contended that he was either limited in, or regarded as being limited in, any of the major life activities which are identified in the regulations. These activities include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 34 C.F.R. § 104.3(j)(2)(ii). Carter has not argued that this court ought to recognize any ma-

jor life activity outside of those listed in the defining regulation. In fact, Carter has neither alleged nor argued that he was substantially limited in any major life activity. Accordingly, summary judgment is due to be GRANTED.

██ If the court were to make Carter's argument for him that he was regarded as being substantially limited in a major life activity, however, the most obvious major life activity which could apply in this case is learning. As earlier stated, LBW contends Carter was not substantially limited in learning since he earned a Ph.D. from a major university. Davis stated that they knew "he was working on his doctorate degree and we just both thought it must not be very bad. It must not be very bad at all. He's highly functioning or able to function with it and it wasn't an issue." Davis Deposition, page 20:24–9. With regard to Daniel's criticism of Carter's use of notes, Davis stated, "after he talked to Dr. Carter about his evaluation, he came back and said, 'oh, it was just that he had a spelling disability that required him to hold his notes.'" Davis Deposition, page 21. Carter has provided no evidence of any negative comments or reactions to the knowledge that he had been diagnosed with a learning disorder.

Under the ADA regulations, a plaintiff is regarded as disabled if his impairment is treated by the employer as constituting a limitation. 29 C.F.R. § 1630.2(1)(1). The Eleventh Circuit has rejected an argument that an employee was regarded as being disabled under the ADA in part because "it is uncontested that all of the decision makers ... considered Standard's back injury to be a temporary condition." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1328 (11th Cir.1998).

In a case cited with approval by the Eleventh Circuit, *see Sutton*, 185 F.3d at 1208 n. 6, the Third Circuit has also looked

to evidence of the employer's perception, pointing out that to demonstrate that an employer regarded a plaintiff as disabled, a plaintiff must show that he was regarded as disabled based on reactions and perceptions of the persons interacting or working with him. *Kelly v. Drexel University,* 94 F.3d 102, 109 (3d Cir.1996). In *Kelly,* the director of the plaintiff's department testified in deposition that he did not consider the plaintiff's impairment to be disabling and affirmed summary judgment against the plaintiff. *Id.* The court upheld the district court's conclusion that the plaintiff failed to show that he was regarded as disabled. *Id.*

In this case, the only evidence pointed out to this court of reactions of persons who made the recommendation of nonrenewal is that those persons did not consider Carter's learning disorder to be severe. Accordingly, based upon the evidence provided, the court cannot conclude that Carter has established that he was regarded as being substantially limited in the major life activity of learning.

■ The other possible major life activity implicated by this case is the major life activity of working. Carter has failed to create a question of fact as to this major life activity as well. In *Murphy,* the Supreme Court stated that "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than one particular job." *Id.* at 523, 119 S.Ct. 2133. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum," that a plaintiff allege that he is "unable to work in a broad class of jobs." *United Airlines,* 527 U.S. at 491, 119 S.Ct. 2139. It is insufficient to show that one is precluded from a specialized job or a particular type of job. *Id.*

Carter has not established that he was precluded from performing an entire class of jobs utilizing his skills. *Murphy* at 524, 119 S.Ct. 2133. In *Murphy,* the Supreme Court looked at evidence of other positions which could be performed by a plaintiff using his skills in determining that he had not been regarded as having an impairment, including evidence that he secured employment after leaving the employment of the defendant in that case. *Id.* In this case, the court has evidence that Carter is able to perform other positions with his skills, since he has obtained a position at Mississippi State University. Carter Deposition, pages 6–7. Since Carter's evidence at most only speaks to his ability to perform a particular job, it is "insufficient, as a matter of law, to prove that [he] is regarded as substantially limited in the major the life activity of working." *Id.* at 525, 119 S.Ct. 2133.

■ In addition, even if a prima facie case had been established, LBW has articulated non-discriminatory reasons for Carter's non-renewal. Carter's proffered evidence does not undermine all of these reasons, particularly the reason relied on most heavily in brief by LBW, that enrollment in the forestry department was declining so that LBW did not want to commit to a second tenured faculty position in that department. LBW has provided evidence of the declining enrollment in the forestry department. *See* Krudop Affidavit at ¶ 14. Krudrop explained that had LBW renewed Carter for a fourth year, he would have been tenured, and LBW would not have had the flexibility to address declining enrollment by eliminating the second instructor position. *Id.* at ¶ 15.

Carter has argued that another person was hired to teach forestry after his contract was non-renewed and her position was not advertised as temporary. Under the evidence provided of the hiring process, however, all employees are hired on a

probationary period and if retained after three years, receive tenure. *Id.* at ¶ 17. The person hired into Carter's position was hired under a one year contract, as Carter had been, in hopes that enrollment in the forestry department would improve, but when enrollment did not improve, her contract was not renewed. *Id.* at ¶ 15.

Carter has produced no evidence to undermine the evidence that there was declining enrollment in the forestry program, or that the department would not have had the flexibility to remove a teaching position if there were a second tenured position. *See Lewis v. Chattahoochee Valley Community College,* 136 F.Supp.2d 1232, 1241 (M.D.Ala.2001) (plaintiff failed to undermine the cost explanation for hiring part-time instructors rather than retaining the plaintiff as a full-time instructor). Accordingly, failure to undermine all of the articulated reasons means that Carter has not established pretext. *See Chapman v. AI Transport,* 229 F.3d 1012, 1037 (11th Cir. 2000) (*en banc*).

Because Carter has failed material fact on the merits of his claim, the court will not address the arguments raised by the parties as to the propriety of Congress' waiver of states' Eleventh Amendment immunity under the Rehabilitation Act.

## V. CONCLUSION

For reasons discussed above, the court concludes that the Motion for Summary Judgment is due to be GRANTED. A separate Order will be entered in accordance with this Memorandum Opinion.

## ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on this date, it is hereby ORDERED that the Motion for Summary Judgment (Doc # 16) is GRANTED. Judgment is entered in favor of Lurleen B. Wallace Junior College and against the Plaintiff Robert E. Carter.

Costs are taxed against the Plaintiff.