[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13474
Non-Argument Calendar

_____

D.C. Docket No. 5:08-cv-00122-CAR

HATTIE A. DICKERSON,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS AGENCY,
CARL VINSON VA MEDICAL CENTER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 7, 2012)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Hattie A. Dickerson, proceeding *pro se*, appeals the district court's order granting the defendants' summary judgment motion on her claim of disability discrimination under Section 501 of the Rehabilitation Act, 29 U.S.C. § 701, et seq. On appeal, Dickerson argues that, despite her disability involving occupational asthma and multiple chemical sensitivity, she could perform the essential functions of her job as a nurse at the Carl Vinson Veterans Administration Medical Center ("the VA"), with reasonable accommodation. She asserts that she provided the VA with a list of job positions to which she could have been reasonably reassigned that would have allowed her to perform her job's essential functions and not caused the VA undue hardship. She contends that the VA nonetheless discriminated against her by not providing her reasonable accommodation.[1]

---

[1] Dickerson mentions the issue of whether the district court properly denied her motion for reconsideration. However, she has abandoned this issue because she has not briefed it. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.") (citation omitted). We also note that, in addition to her claim for discrimination in violation of the Rehabilitation Act, Dickerson lists a myriad of other claims deriving from various statutes, regulations, and the VA's own policies and procedures. Virtually all of these other claims were not asserted in Dickerson's complaint and are being raised for the first time on appeal. We therefore do not consider them. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330-31 (11th Cir. 2004).

To the extent Dickerson's complaint touches upon or makes bare reference to other theories or claims, we need not address them for the following reasons. The defendants' motion for summary

2

We review a grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).

"The Rehabilitation Act (the Act) prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." Sutton v. Lader, 185 F.3d 1203, 1207 (11th Cir. 1999).[2] "To establish a prima facie case of discrimination under the Act, a plaintiff must show that (1)

_____

judgment characterized Dickerson's complaint as alleging only a Rehabilitation Act discrimination claim, and that motion clearly sought resolution of this case in its entirety; it was not a motion for *partial* summary judgment. In Dickerson's counseled response to the defendants' motion for summary judgment, she did not disagree with the defendants' characterization of her complaint and thereby alert the district court of any additional cause of action separate and apart from her claim that the VA violated the Rehabilitation Act by discriminating against her based on her disability. The summary judgment briefing makes clear that the parties—along with the district judge—shared a common understanding that Dickerson's entire case would rise and fall with her ability to demonstrate that she was a "qualified individual" with a disability. Under these particular circumstances, Dickerson failed to preserve any claim other than the discrimination claim discussed herein. See Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("By failing to make this argument in his opposition to summary judgment, [the plaintiff] has failed to preserve this claim. . . . Even an issue raised in the complaint but ignored at summary judgment may be deemed waived."); Kaplan v. Rose, 49 F.3d 1363, 1369 (9th Cir. 1994); Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1163-64 (5th Cir. 1983).

Finally, Dickerson argues something akin to ineffective assistance of counsel with respect to the services provided by her court-appointed counsel in the court below. Any such claim would fail as a matter of law. As we have stated previously, "[a]bsent an erroneous ruling by the district court in its dealings with the parties, the attorneys' conduct is not a ground for reversing the judgment in the original action." Mekedci v. Merrell Nat'l Labs., 711 F.2d 1510, 1522-23 (11th Cir. 1983).

[2]    Discrimination claims under the Rehabilitation Act are governed by the same standards used in cases brought under the Americans with Disabilities Act ("ADA"). Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 U.S.C. § 794(d)). Thus, cases decided under the ADA and the Rehabilitation Act may be used interchangeably. Id. at 1305 n.2.

[s]he has a disability; (2) [s]he is otherwise qualified for the position; and (3) [s]he was subjected to unlawful discrimination as the result of h[er] disability." Id. This appeal hinges on the second element.

A "qualified individual" is an individual who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, if an individual is unable to perform an essential function of her job, even with an accommodation, she is not a "qualified individual." See Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000). "Determining whether an individual is 'qualified' for a job is a two-step process." Reed v. Heil Co., 206 F.3d 1055, 1062 (11th Cir. 2000). First, the individual must satisfy the prerequisites for the position. Id. Second, the individual must demonstrate that she can perform "the essential functions of the job, either with or without reasonable accommodations." Id. The first step is not at issue here.

Reasonable accommodations may include: "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training

4

materials or policies, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

"An accommodation can qualify as 'reasonable' . . . only if it enables the employee to perform the essential functions of the job." See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." Davis, 205 F.3d at 1305. Consideration is given to the employer's judgment as to what functions of a job are essential. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3)(i). In certain situations, regular daily attendance may be an essential function of a position. See Jackson v. Veterans Admin., 22 F.3d 277, 279 (11th Cir. 1994). "Performing the essential functions of a job means, among other things, being able to perform those functions without risk of serious physical harm to oneself or others." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1126 (11th Cir. 1993); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835-36 (11th Cir. 1998).

The plaintiff has the burden to identify an accommodation and establish that the accommodation is reasonable. See Willis v. Conopco, Inc., 108 F.3d 282, 283

5

(11th Cir. 1997).  "[A]n employer is not required to accommodate an employee in any manner in which that employee desires." Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998) (quotations omitted).  The employee "does not satisfy her initial burden by simply naming a preferred accommodation" because "she must show that the accommodation is 'reasonable' given her situation." Id.  The Rehabilitation Act does not oblige employers to employ people who are not capable of performing the duties of the employment to which they aspire or to create alternative employment opportunities for a disabled person. See Sutton v. Lader, 185 F.3d 1203, 1211 (11th Cir. 1999).  The employer is not required to reassign the disabled employee if there is no vacant position, see Lucas, 257 F.3d at 1256-57, or to reallocate job duties to change the essential functions of a job, see Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000).

As noted, the pertinent issue on appeal is whether Dickerson was a qualified individual with a disability, in that she could perform the essential functions of her job as a nurse with reasonable accommodation.[3]  The record shows that, due to her

---

[3]     Dickerson complains that the VA failed to engage in an interactive process with her to identify potential accommodations.  However, we have stated that "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." Willis, 108 F.3d at 285.  Assuming arguendo that the VA failed to engage Dickerson in an interactive process, Dickerson's discrimination claim nevertheless fails because—as will be discussed—she has not demonstrated that a reasonable accommodation could have been made. See Lucas, 257 F.3d at 1256 n.2.

occupational asthma and multiple chemical sensitivity, Dickerson was allergic to an ever-widening range of chemicals and substances, including—*but not limited to*—floor wax. For example, there is evidence that Dickerson had suffered allergic reactions or experienced sensitivity to floor sealant, floor stripper, cleaning products, chemical products, chemical solvents, ammonia, rubbing alcohol, sprays, molds, dust, perfumes, scents and odors, fumes of any kind, latex, insect bites, changes in temperature or weather, volatile compounds, asbestos, and industrial equipment. According to one of Dickerson's doctors, any of the chemicals commonly used by the VA were more likely than not to trigger an allergic reaction, and Dickerson "must NOT be within less than one foot of" certain chemicals or solvents. It is undisputed that during an allergic reaction or when treating such a reaction with medication, Dickerson would be unable to concentrate, react to an emergency, make clinical judgments, or deliver patient care. Moreover, Dickerson's allergic reactions frequently forced her to leave the workplace and not return for extended periods of time.

Accordingly, Dickerson's condition rendered her unable to perform the essential functions of her job as a staff nurse, which included patient care, medication administration, and working throughout the VA's facilities. Because the VA could not guarantee that she would not come near the hundreds of

7

chemicals it commonly used at its facility, Dickerson could not perform the essential functions of her job, with or without reasonable accommodation.[4] Furthermore, the Rehabilitation Act did not require the VA to reassign Dickerson to a position where there were no vacancies, create an entirely new position for her, or reallocate the essential functions of her nursing position.  Because Dickerson has not provided probative evidence that she could perform her job's essential functions with or without reasonable accommodation, she has not shown that she is a "qualified individual" for purposes of the Act.  The district court properly granted summary judgment on this basis.

AFFIRMED.[5]

---

[4]    Early on, Dickerson identified positions in which she claimed she could have avoided waxed floors.  The VA maintains that no nursing services position existed that would have enabled Dickerson to avoid floor wax.  Regardless, Dickerson has never suggested a reasonable accommodation that would have allowed her to avoid coming into contact with the other chemicals, substances, and odors that were likely to trigger an allergic reaction.

[5]    Dickerson's request for oral argument is DENIED.