[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13654
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-03392-MHS


LAFRETA DALTON,

Plaintiff-Appellant,


versus


CENTERS FOR DISEASE CONTROL AND PREVENTION
AND AGENCY FOR TOXIC SUBSTANCES AND DISEASE
REGISTRY,
HILDA SHEPEARD,
both individually and in her professional capacity as the Chief,
Health Promotion and Community Involvement Branch, for the
Atlanta Branch for the Atlanta office of the Agency for Toxic
Substances and Disease Registry,
SYLVIA ALLEN-LEWIS, both individually and in her professional
capacity as the Lead Health Education Specialist, Health Promotion
and Community Involvement Branch and the Plaintiff's immediate
supervisor at the Atlanta branch of the Agency for Toxic Substances
and Disease Registry,
UNITED STATES OF AMERICA,
SECRETARY OF HEALTH AND HUMAN SERVICES, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 6, 2015)

Before TJOFLAT, HULL and ROSENBAUM, Circuit Judges.

PER CURIAM:

This case arises out of LaFreta Dalton's employment as a Health Communications Specialist at the Agency for Toxic Substances and Disease Registry ("Agency"), which is part of the Centers for Disease Control and Prevention ("CDC"), a division of the United States Department of Health and Human Services ("HHS").  As a Health Communications Specialist, Dalton worked with communities that lived near contaminated sites to educate them and provide information they needed.  She was supervised by Sylvia Allen-Lewis, her team leader.  Allen-Lewis's supervisor was Hilda Shepeard.

On April 14, 2010, Allen-Lewis met with Dalton and provided her with a quarterly review.  Dalton was unhappy with Allen-Lewis's critique of her job performance and the next day contacted HHS's Office of Dispute Resolution and Equal Employment Opportunity ("EEO") to complain about the review and to request a transfer to another division within CDC.  While her complaint was being considered, Allen-Lewis met with Dalton again, on June 23, 2010, and counselled

2

her regarding her failure to complete certain assigned tasks adequately.  The next, day, Dalton became ill at work, called 911 and was taken by ambulance out of the building.

Dalton was granted leave for a short period under the Family and Medical Leave Act ("FMLA").  She was denied further FMLA leave after she failed to submit the additional medical documentation Allen-Lewis requested.  Shepeard thereafter sent Dalton a memorandum notifying her that she was being placed on Absence Without Leave and that since she had not submitted the requested medical documentation, the Agency was unable to continue her FMLA status.  The memorandum also ordered Dalton to either report for duty or request FMLA leave and provide acceptable medical documentation to justify the request.  Dalton did neither.  Shepeard consequently issued an Official Reprimand, charging her with failure to follow instructions.  Dalton responded through her attorney, submitting documentation purporting to support her request for further FMLA leave.  The Agency accepted the submission and adjusted Dalton's "leave record to reflect approved use of annual, sick, and Leave without Pay to cover previously granted FMLA leave."

As for Dalton's request for a transfer, which it treated as a request for reasonable accommodation (for a medical condition) under the Rehabilitation Act, the CDC had her examined by a psychiatrist.  The psychiatrist concluded that

Dalton did not display "any cognitive or psychiatric problems that would preclude her from working," but "returning to work" under Allen-Lewis and Shepeard would not, in his view, be a "viable plan," considering that she "feels considerable anxiety and resentment towards" them. He felt that removing Dalton from "continued interactions" with Allen-Lewis and Shepeard would "minimize her anxiety and decrease the risk of exacerbation of her mood symptoms."

The CDC accepted the psychiatrist's recommendation and notified Dalton that it had assigned her to another division of the Agency; she would report to that division's deputy director and would have no further contact with Allen-Lewis or Shepeard. Dalton rejected this accommodation and did not return to work. As a result, her employment was terminated.

After filing a complaint with the EEO on April 15, 2010, and purportedly exhausting her administrative remedies, Dalton brought this lawsuit against the CDC, the Agency, Allen-Lewis and Shepherd claiming (1) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981; (2) a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (3) a violation of the FMLA, 29 U.S.C. § 2601 *et seq.*; (4) intentional infliction of emotional distress; and (5) negligent retention, supervision and

training.[1]  The defendants moved the District Court to dismiss Dalton's complaint on various grounds, among them, that the defendants were not proper parties to Dalton's Title VII claims; that many of Dalton's ADA and Title VII claims had not been administratively exhausted because she had not included them in the complaint she filed with the EEO office; and that the complaint failed to state a claim for relief under the FMLA and § 1981.  The District Court granted the defendants' motion to dismiss in full, but granted Dalton leave to amend her complaint to correct the deficiencies in her disability discrimination and Title VII claims, provided that they were limited to her administratively exhausted allegations.

Dalton filed an amended complaint and this time named the Secretary of HHS as the defendant.[2]  The amended complaint presented two claims that are relevant here.[3]  The first claim, brought under Title VII, is that the Agency retaliated against her for filing a complaint with the EEO by denying her FMLA

---

[1]  Dalton's complaint named as defendants the CDC, the Agency, Allen-Lewis and Shepeard, and the United States.  With leave of court, and as indicated in the text, *supra*, Dalton subsequently filed an amended complaint, which named the Secretary of the Department of Health and Human Services as the sole defendant.

[2]  The amended complaint also named as defendants HHS and CDC.  The Secretary was the proper defendant for the relief Dalton sought, and was treated as such by the District Court in its order granting the Secretary's motion for summary judgment and dismissing the action.  Doc. 101.

[3]  The amended complaint is not a model of clarity, so we take the description of the claims from the Report and Recommendation the Magistrate Judge submitted to the District Court, and the District Court adopted in full in granting the Secretary summary judgment.

leave.[4]  The second claim, brought under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.,* is that the CDC discriminated against her because of her disability, "depression and severe anxiety and Post Traumatic Stress Disorder."[5]  Following discovery, the Secretary moved the District Court for summary judgment. Addressing the two claims set out above, the Secretary argued that the Title VII claim failed because Dalton had not presented evidence that the reasons the Agency gave for denying FMLA leave were pretextual, i.e., that they were not the real reasons for the denial.  The Secretary also argued that the Rehabilitation Act claim failed because transferring an employee solely to allow her to work under a different supervisor constituted a "reasonable accommodation."

The District Court granted the Secretary's motion.  Dalton now appeals the District Court's orders dismissing her initial complaint and granting summary on Title VII and Rehabilitation Act claims asserted in her amended complaint.

Turning to the dismissal of her initial complaint, Dalton argues that the District Court erred in dismissing seven of the Title VII claims "factually" presented in her complaint for lack of administrative exhaustion.  She contends that those claims were sufficiently "like, or related to" the claims in her EEO complaint that they should be considered exhausted.  Addressing the summary

---

[4]  Doc. 95, at 32–34.

[5]  Doc. 34, at 14.

6

judgment, she argues, with respect to her Title VII claim, that court erred in concluding that she had failed to show that the Agency's proffered legitimate, non-retaliatory reasons for denying FMLA leave were mere pretext for retaliation. She argues that the court erred in rejecting her Rehabilitation Act claim because, in her view, she established that the CDC failed to provide her with a reasonable accommodation for her disability.  We find no merit in Dalton's appeal of the two District Court orders and accordingly affirm.

I.

As Dalton properly recognizes, prior to bringing her Title VII claims she had to exhaust her administrative remedies.  *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999).  The purpose of the exhaustion requirement is "to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer."  *Brown* v. Snow, 440 F.3d 1259, 1263 (11th Cir. 2006) (quotation marks omitted).  In exhausting her claims, Dalton had a duty to make a good-faith effort to cooperate with the EEO by providing any relevant information the EEO requested.  *Crawford*, 186 F.3d at 1326.

The seven claims Dalton says the District Court should have recognized in her initial complaint were not asserted as discrete claims; rather, they were nothing more than allegations in the complaint's "Statement of Facts."  The EEO did not

7

perceive as discrete claims the seven claims she says her initial complaint "factually" presented. The seven claims first appeared as discrete claims in the defendants' motion to dismiss, as part of their argument that the claims had not been exhausted. Dalton concedes that she never presented the claims, as discrete claims, to the EEO or otherwise put the EEO on notice that it should investigate them, even though the EEO asked her to identify any claims beyond those discretely asserted that it ought to investigate.

A party standing in Dalton's shoes must provide information when the EEO requests it. *Crawford*, 186 F.3d at 1326. Dalton failed to honor the requests the EEO made. In short, she failed to cooperate with the EEO in good faith, to facilitate a full investigation. *See id.* Consequently, the District Court did not err in dismissing the seven claims at issue for lack of administrative exhaustion.

## II.

We review *de novo* the District Court's decision granting the Secretary's motion for summary judgment, taking the evidence in the record in the light most favorable to the Dalton and drawing all inferences in her favor. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). In opposing the Secretary's motion, Dalton was not entitled to "rest upon the mere allegations" of her amended complaint; instead, she had to convince the District Court that the evidence in the record created a genuine issue of "material fact" for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quotations omitted).  With these principles in mind, we turn to the Title VII and Rehabilitation Act claims now before us.

### A.

Title VII prohibits the federal government, *qua* employer, from engaging in "discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Title VII also makes it unlawful for the government, *qua* employer, to retaliate against an employee because she has opposed an unlawful employment practice.  42 U.S.C. § 2000e-3(a).

If the employee establishes a *prima facie* case of retaliation, and the employer articulates a legitimate, non-retaliatory reason for its employment action, then the employee must show that the reason proffered by the employer was not the true one, but, instead, was more likely a pretext for retaliation.  *Goldsmith v. City of Artmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (applying the *McDonnell Douglas*[6] framework to Title VII retaliation cases).

Dalton claims that the Agency denied her FMLA leave in retaliation for her filing a complaint with the EEO on April 15, 2010.  The Secretary justified the Agency's action by saying that Dalton failed "to provide a certification from her physician indicating whether the leave was needed on an intermittent basis or for a

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)

continuous period and the probable duration of her incapacity," as required by 5 C.F.R. § 630.1208(b)(2).[7]  Dalton could have shown that this reason was mere pretext by coming forth with evidence that the Agency's motive was retaliation and that its proffered reason was unworthy of credence.  *Texas Dep't of Cmty. Affiairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981).  But she did not.  She pointed to nothing in the evidentiary record to show that Shepeard, who was acting for the Agency in denying FMLA leave, did not honestly believe that Dalton had submitted inadequate paperwork for the leave.  Moreover, the fact that Shepeard immediately granted FMLA leave when Dalton first requested it weakens, if not destroys altogether, Dalton's argument that the subsequent denial of leave was a pretext.  We find no error in the District Court's rejection of Dalton's Title VII retaliation claim.

## B.

The Rehabilitation Act "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability."  *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000).[8]  An employer discriminates under

---

[7] The certification Dalton's physician did provide indicated, with respect to her situation, "duration estimate two weeks at a time" and "present incapacity could last up to three to four months until rehabilitation is complete."

[8] "To establish a *prima facie* case of discrimination under the Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability."  *Sutton v. Lader*, 185 1203, 1207 (11th Cir. 1999) (citing *Gordon v. E.L. Hamm & Assocs.,* 100 F.3d 907, 910 (11th Cir.

the Rehabilitation Act when it fails to provide a "reasonable accommodation" for an employee with a disability, unless the accommodation would cause undue hardship on the employer. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). The burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion to demonstrate that such an accommodation is reasonable. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).

The Rehabilitation Act may require an employer to transfer a disabled employee to a vacant position as a reasonable accommodation. *Lucas*, 257 F.3d at 1256. However, "[e]mployers are not required to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists." *Id.*

Dalton failed to carry her burden to identify an accommodation that would allow her to perform her job. After she became disabled, she did not identify a job within the Agency that was available and that she could do; nor did she identify a vacant position outside the Agency. Dalton points to the complaint she made to the EEO on April 15, 2010, in which she requested a transfer to a different

1996)." The plaintiff in *E.L. Hamm & Associates* brought his claim under the ADA. The standard for determining liability under the Rehabilitation Act is the same as that under the ADA. *Sutton*, 185 F.3d at 1208.

11

department within the CDC, as evidence that she identified an available position. However, the complaint was made before she became disabled, on June 24, 2010, and several months before she requested a reasonable accommodation through a Reasonable Accommodation Coordinator in March 2011.  Identifying a position that was available before she became disabled obviously could not satisfy Dalton's burden to identify a reasonable accommodation.  *See Stewart*, 117 F.3d at 1286.

Assuming for sake of argument, however, that the CDC was required to provide Dalton with a reasonable accommodation, the record indicates that it did just that when it offered her a position with a new supervisor, in a different location, which would have allowed her to avoid having to communicate with Allen-Lewis and Shepeard.

## III

For the foregoing reasons, we affirm the judgment of the District Court.

AFFIRMED.

12