**James CARPER, Plaintiff,**

v.

**TWC SERVICES, INC., Defendant.**

**Case No. 11–60132–CIV.**

United States District Court,
S.D. Florida.

Oct. 7, 2011.

Randy Alan Fleischer, Randy A. Fleischer Law Offices, Davie, FL, for Plaintiff.

Christine D. Hanley, Christin Marie Russell, Christine D. Hanley & Associates, West Palm Beach, FL, for Defendant.

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

LURANA S. SNOW, United States Magistrate Judge.

**THIS CAUSE** is before the Court on Defendant, TWC Services, Inc.'s Motion for Summary Judgment (D.E. 27). Since the parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of final judgment in this case, this Court has jurisdiction to decide the matter pursuant to 28 U.S.C. § 636(c). Having carefully reviewed the Motion, competing Statements of Fact, Plaintiff's Response in Opposition to the Motion, and Defendant's Reply, as well as the accompanying exhibits, deposition transcripts, and affidavits of the various witnesses in this matter, the Court finds final summary judgment in this case warranted.

### I. BACKGROUND

Plaintiff, James Carper ("Carper"), commenced this action against his former employer, Defendant TWC Services, Inc. ("TWC"), on December 17, 2010, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida alleging a single count of disability discrimination and failure to accommodate under the Florida Civil Rights Act, Fla. Stat. ch. 760 ("FCRA"). The case was removed to this Court on January 19, 2011 based on diversity of citizenship. Defendant moves for summary judgment on

Plaintiff's disability discrimination claim on the ground that he is not disabled within the meaning of the FCRA and, thus, unable to satisfy his burden of establishing a *prima facie* case of discrimination under the Act.[1] Defendant moves for summary judgment on Plaintiff's failure to accommodate claim arguing that because Plaintiff is not disabled within the meaning of the Act, Defendant was under no obligation to offer accommodation, and that even if such an obligation existed, Plaintiff has failed to adduce sufficient evidence from which the trier of fact could conclude that Plaintiff requested an accommodation from Defendant that was denied.

### II. FINDINGS OF FACT

The following facts are pertinent to the resolution of Defendant's Motion for Summary Judgment and are generally undisputed. Where a major fact is in dispute, such dispute is noted. Additionally, where there is any discrepancy in the record, the Court views the evidence in the light most favorable to the Plaintiff.

Defendant is a service provider for heating, ventilating and air conditioning (HVAC) systems in the Southeast United States. At the time in question, Plaintiff was employed by Defendant as a service manager in the Defendant's Ft. Lauderdale Branch from about April 2007 until his termination on December 8, 2008. At all times in question, Plaintiff reported to Debra Held ("Held"), the branch manager at that location and Plaintiff's supervisor. As a service manager, Plaintiff's duties included supervising and dispatching technicians, preparing proposals, ordering parts, conducting performance reviews of

---

1. While Defendant raised additional grounds in support of its Motion directed to Plaintiff's discrimination claim, because the Court finds summary judgment on the claim warranted for failure to establish the first of the three required prongs of his prima facie case, it is unnecessary to proceed with an examination of the remaining two prongs. *Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1226 (11th Cir.1999)

technicians and interviewing new technicians, and offering customer support. Plaintiff contends and for purposes of the instant Motion for Summary Judgment this Court assumes that although Plaintiff was hired to perform the above job duties, because of Held's "micro-manager-type" supervising style he did not actually get the opportunity to perform all of the duties assigned him.

The record establishes that at least until April 2008, Plaintiff performed his job satisfactorily. A May 2008, job assessment of Plaintiff's performance shows that Plaintiff met or exceeded requirements in all but one of the twenty-eight individual assessment areas (below requirements rating only in the area of "communications") and that he was making progress towards all of his goals.[2] Defendant contends that Plaintiff's job performance began to deteriorate during the last eight (8) months of his employment beginning in or around April/May 2008. To support this claim Defendant attaches numerous e-mails authored by Held and generated during the time period in question referring to what Defendant alleges to be complaints regarding Plaintiff's job performance. Plaintiff does

not dispute the authenticity of the e-mail evidence, but disagrees with the negative connotation Defendant has attached to them. Plaintiff asserts that the subject e-mails are mostly routine, and that the vast majority of them were sent after May 2008, when Held first was informed of Carper's heart condition.

The e-mail evidence speaks for itself and while a portion of the e-mails may refer to routine matters, the vast majority of them are critical of Plaintiff's job performance.[3]

Held testified at deposition that sometime in 2008 Plaintiff's job performance started to decline and the incidence of e-mails critical of Plaintiff's performance increased. According to Held, rather than improving, Plaintiff's performance grew worse, resulting in an October 14, 2008 meeting between Held and Plaintiff. The record is undisputed that at that meeting, Held relayed her concerns over certain perceived deficiencies in Plaintiff's job performance and presented Plaintiff with a list of specific items that she wanted him to address in a plan of action.[4]

The record contains an October 14, 2008 e-mail communication from Held to her supervisors purporting to be a follow-up to

2. *See* Performance Evaluation, attached as Ex. "D" to Pltff's Resp. to Def's Stmt. of Facts (D.E. 34–7)

3. *See, e.g.,* April 3, 2008 e-mail admonishing Plaintiff for failing to resolve a service issue (D.E. 28–3); April 20, 2008 e-mail admonishing Plaintiff for improperly billing customer for service covered by warranty and noting that this has happened too many time before (D.E. 28–6); May 1, 2008 e-mail admonishing Plaintiff for failure to include basic billing information on work orders (D.E. 28–7); May 20, 2008 e-mail admonishing Plaintiff for his failure to return client phone calls (D.E. 28–3); August 15, 2008 e-mail admonishing Plaintiff for his continuing failure to provide her with a survey that she had asked for several times (D.E. 28–3); e-mails of October 21 and October 22, 2008 inquiring why proposals requested on August 25 and August 28,

2008 were not completed (D.E. 28–10; 28–3); November 3, 2008 e-mail admonishing Plaintiff for submitting proposals full of errors and instructing him to check his work (D.E. 28–3); November 12, 2008 e-mail admonishing Plaintiff to do his homework first before wasting the company's time and money (D.E. 28–3); November 7, 2008 e-mail inquiring as to why Plaintiff failed to follow up on customer delivery and billing issue as he had been instructed and as he had agreed (D.E. 28–3); November 18, 2008 email advising Plaintiff of his failure to catch a quality control issue and subsequent failure to respond to the customer about such issue prior to departing the office for his medical leave (D.E. 28–12).

4. *See* Held Depo. (D.E. 28–3, p. 46); McDaniel Depo., (D.E. 28–5, pp. 25–26, 32, 47–48, 51–52); Composite Ex. 3 to Held Depo.

the meeting with Plaintiff in which she refers to the meeting, and attaches a "list of action items I wanted [Plaintiff] to formally address in writing to me with his POA [plan of action] on how he was going to improve/correct." *Id.*[5]

It is unclear when Held first learned of Plaintiff's heart condition and his alleged need for accommodation. Plaintiff alleges that he first told Held about his heart condition in May of 2008, and at about that same time, informed her about the need to accommodate his condition, which prevented him from climbing ladders and from being outside in the heat. Held testified that she was not certain when Plaintiff first notified her of his heart-related health issues, but does recall Plaintiff telling her of his need for surgery approximately one month before the surgery took place in November 2008. As for the requested accommodation, Held admits that Plaintiff requested, and she agreed to accommodate Plaintiff's heart condition by allowing him to refrain from climbing ladders and from being outside in the heat, but she does not indicate the date of this request.

For purposes of the instant motion, the Court assumes, consistent with Plaintiff's allegations and testimony, that during the relevant time period Plaintiff's heart condition resulted in shortness of breath, dizziness and fatigue, preventing Plaintiff from walking long distances, spending long periods of time in the heat, or climbing a ladder; that these limitations were made known to Defendant in May 2008; and that upon such disclosure, Defendant accommodated Plaintiff by allowing Plaintiff to avoid these limiting activities.[6] The Court also assumes that despite his shortness of breath and resulting limitations, Plaintiff was able to perform the essential functions of his job, with the accommodations which Plaintiff admits Defendant provided.[7]

It is undisputed that Plaintiff's heart surgery took place on November 20, 2008 and that Plaintiff was absent from work for approximately two and one-half weeks during the surgery and recuperation. According to Held's testimony, while Plaintiff was on medical leave, she was forced to perform some of Plaintiff's duties and for the first time comprehended the full extent of Plaintiff's sub-standard performance.[8] Held testified, and a memo from Held to Regional Manager Wayne McDaniel confirms, that Held had made the decision to terminate Plaintiff by at least November 29, 2008, while Plaintiff was still on medical leave recovering from his surgery.[9] In a supplementary response to Plaintiff's Interrogatory No. 3, Defendant stated Plain-

---

**5.** The e-mail concludes by stating "I made it very clear that if these items aren't improved than (sic) I will be force (sic) to replace him." *Id.* Plaintiff disputes that he was ever informed in that meeting or at any other time that if his job performance did not improve he would be terminated, and disputes he was given a time certain to provide the requested Plan of Action. Accordingly, viewing all disputed facts in Plaintiff's favor, as required, the Court assumes for purposes of the instant Summary Judgment Motion that consistent with Plaintiff's testimony, he was never threatened with termination and was not provided a date by which he was required to present Held with the requested Plan of Action

**6.** *See generally,* Pltff's Resp. to Mtn. (D.E. 34–1), Pltff's Objection to Def's Stmt. of Undisputed Facts (D.E. 34), and Carper Depo., pp. 87–92.

**7.** *See* Carper Depo., pp. 87–92. "It wasn't the physical—[requirements of Plaintiff's job]—that I couldn't do; I couldn't be out in the heat. I got short of breath very quickly . . . ." Carper Depo., pp. 87–92.

**8.** Held Depo., pp. 62, 105, 109.

**9.** Held Depo., p. 61

tiff's termination was first considered on October 13, 2008.

Plaintiff returned from medical leave on December 8, 2008. At or around that time Plaintiff provided Defendant with a doctor's note which released him to full duty work with no restrictions. Held terminated Plaintiff on the morning of December 8, 2008, the day he returned to work. According to Held, upon being told of his termination, Plaintiff asserted that Defendant "could not fire him because he had just returned from medical leave, and claimed he could "sit [there] and do nothing" and she could not "touch" him.[10] Plaintiff denies ever having made these statements. He contends the comments attributed to him are "outright falsifications," and points out that these alleged statements were not documented in Held's report of Plaintiffs termination, which she prepared that same day.[11] For purposes of the instant motion, the Court credits Plaintiff's version of this event and will disregard Held's characterization of Plaintiff's reaction to his termination.

While Plaintiff was in the hospital and later when he was at home following his surgery, Held forwarded Plaintiff proposals and other work for him to review. She also left Plaintiff numerous telephone and e-mail messages requesting advice and information on work-related matters, some of which went unanswered. Held testified that it was Plaintiff who asked Held to forward him proposals to work on during his recovery, but Plaintiff denies this and his testimony is corroborated by the testimony of at least one colleague, H. Petit, who testified that it was Held and not Plaintiff who suggested Plaintiff work during his recovery.[12] Once again, for purposes of the instant motion, the Court

assumes that it was Held who requested work from Plaintiff while Plaintiff was on medical leave, and that Plaintiff did not initiate that request.

Plaintiff contends that Held was angry and upset at him for not returning her phone calls and e-mails while he was on medical leave, and that his lack of attention to Held's demands during that time was a substantial motivating factor in her decision to terminate Plaintiff.

On or about May 14, 2009, approximately five months after Plaintiff was terminated, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC Charge was dismissed on August 31, 2010. The basis for the EEOC's dismissal is irrelevant for purposes of this Order and has not been considered by the Court.

## III. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P., Rule 56(c), summary judgment is mandated when the pleadings, affidavits and discovery materials on file demonstrate there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The moving party bears the burden of meeting this exacting standard by informing the court of the basis for its motion, and identifying those portions of the pleadings and evidence which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether the moving party has

---

**10.** Held Depo., p. 106.

**11.** *See* E–Mail of December 8, 2008, attached as Ex. C to Plaintiff's objections to Defen-

dant's Statement of Undisputed Facts (D.E. 34).

**12.** *See* H. Petit Depo., p. 17.

satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Notably, mere allegations or denials in the non-movant's pleadings will not suffice to meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Rather, there must be evidence on which the jury could reasonably find for the non-movant. *Id.* at 252, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (to successfully establish the existence of a genuine factual dispute, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts ... [it] must come forward with 'specific facts showing that there is a genuine issue for trial' ")(quoting Fed.R.Civ.P.56(e)). On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (1986). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106

S.Ct. 2505. To pose a jury question, however, there must exist a conflict in substantial evidence. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## B. *Florida Civil Rights Act*

██ The Florida Civil Rights Act (the "FCRA" or the "Act") provides that it is unlawful for an employer:

> To discharge or fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

Fla. Stat. § 760.10(1)(a). Because the FCRA is nearly identical to the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA"), Federal law interpreting the ADA is applicable to claims arising under the FCRA and *visa versa*. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir.2007); *Cohen v. Carmel*, 2010 WL 2991558, *2 (S.D.Fla. July 27, 2010). Accordingly, the undersigned shall look to case law construing the ADA and related regulations for guidance. *See Greene v. Seminole Elec. Co-op., Inc.*, 701 So.2d 646, 647 (Fla. 5th DCA 1997)(noting that in the disability discrimination case before it under the FCRA, the court would be construing the FCRA in conformity with its federal counterparts including the ADA and related regulations).

The ADA is comprehensive legislation that addresses discrimination against disabled individuals.[13] Title I of the ADA

---

**13.** Plaintiff's discrimination claim is based on his termination that occurred on December 8, 2008, prior to the amendments to the ADA that took effect January 1, 2009. *See* ADA Amendments Act of 2008, Pub.L. No. 110–325 § 8, 122 Stat. 3553, 3559. Because Congress did not express intent for the amendments to apply retroactively, they are not applicable here. *See Fikes v. Wal–Mart, Inc.*, 322 Fed. Appx. 882, 883 n. 1 (11th Cir.2009) (*per curiam*). Accordingly, the Court analyzes Plaintiff's claim under the ADA as it existed prior to January 1, 2009.

regulates discrimination in the workplace and prohibits employers from discriminating on the basis of a known physical or mental impairment of a "qualified individual with a disability." 42 U.S.C. § 12112(a) (2008). A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under Title I, employers must provide reasonable accommodations for known disabilities "unless doing so would result in undue hardship upon the employer." *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996).

## C. *Method Of Proof*

To establish a case of intentional discrimination in violation of the ADA, a plaintiff may rely on direct or circumstantial evidence, and the type of evidence before the court affects the allocation of evidentiary burdens:

> First, if direct evidence of discrimination exists, the familiar framework of establishing a *prima facie* case based on circumstantial evidence and the alternating burdens of proof established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) do not apply.... Moreover, when a case for discrimination is proved by direct evidence, in is incorrect to rely on a *McDonnell Douglas* form of rebuttal.

*Loperena v. Scott*, 2009 WL 1066253, *9 (M.D.Fla. April 21, 2009).

█ In a direct evidence case, an unconstitutional motive has been deemed to have been a determinative factor in an employment decision, and the burden is on the defendant to prove by a preponderance of the evidence that the same decision would have been reached even absent the discriminatory motive. *Id.*; *Farley v. Nationwide Mut. Ins., Co.*, 197 F.3d 1322, 1335 (11th Cir.1999). Because of the ex-

ceedingly high burden of proof placed on the employer in a direct evidence case, "a finding that direct evidence of discrimination exists, standing alone, is normally sufficient to defeat a motion for summary judgment." *Id.* On the other hand, in a case where the evidence relied upon is circumstantial, courts apply Title VII's burden-shifting analysis, which requires the plaintiff to prove a prima facie case of disability discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802–803, 93 S.Ct. 1817. Once the employee's prima facie burden is established, the employer's "burden on rebuttal is to produce a legitimate, nondiscriminatory reason for the challenged employment decision.... This burden is merely one of production, not persuasion, and is exceedingly light." *Quick v. Tripp, Scott, Conklin and Smith, PA*, 43 F.Supp.2d 1357, 1364 (S.D.Fla.1999)

█ In the instant case, Plaintiff asserts that he has presented a direct evidence case, and therefore the *McDonnell Douglas* burden-shifting analysis is inapplicable and Defendant may prevail only by proving that it would have made the same decision even if it had not allowed discrimination to play a role. *See Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 931 (11th Cir. 1995). However, Plaintiff's case is not, as he contends, based on direct evidence. The Eleventh Circuit defines direct evidence in the employment context as, "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Kilpatrick v. Tyson Foods, Inc.*, 268 Fed.Appx. 860, 861–862 (11th Cir.2008)(internal citations and quotations omitted). Under this definition "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a protected classification, constitute direct evidence." *Id.* To qualify, such direct evidence must reflect " 'a dis-

criminatory ... attitude correlating to the discrimination ... complained of by the employee,' and must indicate that the adverse employment decision was motivated by the decision-maker's intent to discriminate." *Lawson v. Plantation Gen'l Hospital,* 704 F.Supp.2d 1254, 1267, n. 9 (S.D.Fla.2010)(internal citations and quotations omitted). *See also Jones v. Bessemer,* 151 F.3d 1321, 1323 n. 11 (11th Cir.1998)(noting that the 11th Circuit has severely limited what statements constitute direct evidence)(citing *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 962 (11th Cir.1997)).[14]

 Here, Plaintiff has presented no direct evidence of discrimination whatsoever. Essentially, Plaintiff asks the Court to construe three e-mails from Held dated November 29, December 3 and December 8, 2008,[15] expressing Held's dissatisfaction with Plaintiff's perceived failure to return her phone calls and e-mails while he was recuperating from his surgery, as "direct evidence that Held decided to fire Plaintiff because [Plaintiff] did not return her communications or perform his duties while on medical leave." Pltff's Resp., (D.E. 21, p. 10). From this, the Court is asked to *infer* that Plaintiff's termination was motivated by disability-based discrimination. When a fact requires an inference, it can not be

direct evidence. *See Kilpatrick,* 268 Fed. Appx. at 861–862 (noting that direct evidence must prove the existence of a fact *without* inference or presumption).

 As the *Kilpatrick* court observed, only blatant remarks constitute direct evidence. *Id.* 268 Fed.Appx. at 861–862. Here, the statements themselves are benign, demonstrating merely that Held is annoyed at Plaintiff for not returning her phone calls and e-mails. To the extent that Held mentions Plaintiff's impairment or surgery, it is merely for the purpose of establishing context, e.g. "[t]hough [Plaintiff] was not fully released back to work until 12/08/08, he made no attempt to return any of my phone calls or e-mails," [16] and she displays no overt or implied discriminatory animus. The statements do not evince on their face an intent to discriminate on the basis of a disability or perceived disability nor do they implicitly suggest any discriminatory animus on account of any such alleged disability. Thus, contrary to Plaintiff's contention, this is not a "direct evidence" case, such that Plaintiff "need not produce any other evidence in order to survive judgment as a matter of law." *See* Pltff's Resp. (D.E. 34–1, p. 13).

**14.** In his response, Plaintiff attempts to persuade the Court to adopt the more relaxed standard of direct evidence utilized by the Eleventh Circuit in *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir.1999), wherein the Court defined "direct evidence, in the context of employment discrimination law, [to mean] evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic." *Id.; See* Pltff's Resp. (D.E. 34–1, pp. 10–14). Plaintiff's reliance on *Wright,* however, is misplaced, in that Eleventh Circuit cases post dating *Wright* have roundly rejected *Wright's* more relaxed standard in favor of the traditional standard enunciated in *Desert Palace. See, e.g., Kilpatrick,* 268 Fed.Appx. at 861–862

(deeming *Wright's* more relaxed view of the direct evidence standard of limited precedential value because, among other things, "[Eleventh Circuit] case law, both before *Wright* and since, has used the standard applied by the district court in this case *i.e.,* that direct evidence in this context means 'evidence, which if believed, proves existence of fact in issue without inference or presumption.' "). Accordingly, Plaintiff's invitation to apply *Wright's* relaxed direct evidence standard to the instant case is rejected.

**15.** *See* Composite Ex. "C" attached to Plaintiff's Resp. (D.E. 34–5).

**16.** *See Id.* (December 8, 2008 e-mail)

To the extent Plaintiff relies on the timing of his discharge to demonstrate direct evidence of discrimination, such reliance is misplaced. The fact the decision to terminate Plaintiff was made at the time he was on medical leave and that he was notified of such decision immediately upon his return from such leave does not, contrary to Plaintiff's assertion, constitute direct evidence of discrimination. As a preliminary matter, the decision to terminate is not at all suspect when one considers Plaintiff's documented performance deficiencies together with the testimony of Held that the true extent of such deficiencies was not made known until Held was forced to assume Plaintiff's duties while he was on medical leave. More importantly, none of the numerous e-mails documenting Plaintiff's performance issues mention Plaintiff's impairment in derogatory terms or suggests that Plaintiff's health problems contributed to what Held clearly viewed as sub-standard performance on the part of Plaintiff. It is true that the timing of an employee's termination may, *in combination with* other indices of disability-based bias, constitute evidence suggestive of disability discrimination. *See Bassett v. City of Minneapolis*, 211 F.3d 1097, 1105 (8th Cir.2000)(temporal proximity between employee's formal discrimination complaints and the city's adverse employment actions justified inference of discrimination and, thus, presented a genuine dispute of material fact precluding summary judgment).

However, where, as here, the employee's reliance is on timing *alone,* and there is substantial record evidence of performance problems pre-dating the termination, temporal proximity is insufficient to prove, directly or by inference, a discriminatory animus *on account of a disability.* See *Marcelin v. Eckerd Corp. of Florida,* 2006 WL 923745, *10 (M.D.Fla. April 10, 2006)(granting summary judgment for employer and noting, "the significance of temporal proximity is negated, where, as is the case here, the employer has concerns about the employee's performance that predate the protected conduct.")(and cases cited therein).

Also insufficient for purposes of establishing direct evidence of discrimination, is the testimony Plaintiff attributes to Defendant's President and Regional Manager, Messrs. Morrison and McDaniel, respectively, that in their view it was "inappropriate" for Held to send e-mails to Plaintiff while he was on medical leave.[17] As Defendant correctly observes, the ADA prohibits discrimination based on a disability or a perceived disability and does not outlaw "inappropriate" behavior. Thus, however "inappropriate" Held's communications might have been, they were irrefutably free of any discriminatory comments or disability-based animus and do not constitute direct evidence of discrimination. *See Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405,

---

17. In his response, Plaintiff asserts, with no accompanying citation or reference to an exhibit, affidavit or deposition transcript, that Defendant's President and Regional Managers "agree" that the subject e-mails were "inappropriate and possibly discriminatory." (D.E. 34–1, p. 10) The Court has reviewed the record evidence presented, including the deposition transcripts of these individuals, and while it has found testimony to support Plaintiff's claim that Defendant's representatives viewed the subject e-mails as "inappropriate," it has been unable to find testimony to support Plaintiff's claim that Defendant's representatives viewed the subject e-mails as "possibly discriminatory." Regardless, even if there was testimony to this effect, such testimony would be irrelevant and insufficient for purposes of defeating the instant motion. Whether the record contains material facts in dispute sufficient for purposes of overcoming summary judgment is a determination reserved exclusively for the court, not a lay witness who is precluded by law from testifying to a legal conclusion. *See United States v. Lay,* 612 F.3d 440, 448 (6th Cir.2010).

165 L.Ed.2d 345 (2006)(noting that Title VII is not a civility code). As the court stated in *Wascura v. City of South Miami*, 257 F.3d 1238 (11th Cir.2001),

> We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.

*Id.* at 1247 (citation omitted).

In summary, the Court has carefully considered all of the evidence presented and does not find any direct evidence of discrimination, so as to relieve Plaintiff of his obligation to establish a *prima facie* case of disability discrimination under the Act. Accordingly, the *McDonnell Douglas* burden-shifting analysis applies in this case, which requires the Plaintiff to prove a prima facie case of disability discrimination by a preponderance of the evidence. *Kilpatrick*, 268 Fed.Appx. at 861–862.

### D. *DISABILITY DISCRIMINATION*

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. *Id.* An inability to satisfy any one of the above three prongs is fatal to a plaintiff's claim. *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999). Plaintiff shoulders the additional burden of demonstrating that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Morisky*, 80

F.3d at 448. In all cases alleging disability discrimination, the threshold issue is whether at the time of the complained of employment action, Plaintiff had a qualifying disability. *Id.*

Viewing all of the facts and inferences in Plaintiff's favor, the Court finds that Plaintiff cannot sustain his burden of establishing a *prima facie* case of disability discrimination because he is unable to show that he is disabled within the meaning of the Act.[18] In order to satisfy the first prong, namely that a disability exists, Plaintiff must show that he suffers from a disability as that term is defined in the Act and related regulations. The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C). To avoid summary judgment, Plaintiff must adduce sufficient evidence from which a fact finder could reasonably conclude that he has a "disability," defined in any one of the three ways provided for under the Act. In the instant case Plaintiff invokes each of the three disability definitions above in an attempt to establish that he is "disabled" within the meaning of the Act.

### 1. *No Evidence Of A Substantial Limitation Of Any Major Life Activity*

■ To establish a disability under the first definition provided under the Act, Plaintiff must demonstrate that he has a physical impairment that "substantially limits" one or more of his "major life activities." While the ADA does not define the terms "substantially limits" or "major life activities," the court is directed to look for

---

18. Because the Court finds summary judgment on Plaintiff's disability discrimination claim warranted for failure to establish the first of the three required prongs of his prima

facie case, it is unnecessary to proceed with an examination of the remaining two prongs. *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999)

guidance to the Regulations issued by the EEOC. *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 911 (11th Cir. 1996), *cert. denied*, 522 U.S. 1030, 118 S.Ct. 630, 139 L.Ed.2d 610 (1997); *Palmer v. Albertson's LLC*, 2010 WL 785652, *3 (N.D.Fla. March 3, 2010). The determination of whether a plaintiff's impairment "substantially limits major life activities" is made on a case-by-case basis. *Collado v. United Parcel, Serv.*, 419 F.3d 1143, 1155 (11th Cir.2005).

The relevant EEOC Regulations define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i) (2008). A "substantial limitation" occurs when an individual is "[s]ignificantly restricted as to the condition, manner, or duration under which [he/she] can perform a particular major life activity as compared to the ... average person." 29 C.F.R. § 1630.2(j) (2008) The Regulations also instruct the court to take into account "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact ... from the impairment." *Id.* at § 1630.2(j)(2). These provisions require a substantial limitation on a major life activity and exclude individuals with minor impairments which merely affect the ability to satisfy the singular demands of a particular job, *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000); *Gupton v. Commonwealth of Virginia*, 14 F.3d 203 (4th Cir.), *cert. denied*, 513 U.S. 810, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); *Forrisi v. Bowen*, 794 F.2d 931, 933–34 (4th Cir. 1986), and individuals with only temporary impairments, *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir.1999)("A temporary inability to work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act.") (citation omitted). Further, courts hold that an individual who "functions only moderately below average is not substantially limited ... [a] diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, does not constitute a disability under the ADA." *Reis v. Universal City Dev. Partners, Ltd.*, 442 F.Supp.2d 1238, 1245 (M.D.Fla.2006)(internal quotations omitted)

Plaintiff argues that he is disabled under the Act by virtue of his coronary heart disease which necessitated surgery and the implantation of a pacemaker. According to Plaintiff, the fact that heart disease has been included in the non-exclusive list of conditions identified in the Code of Federal Regulations as a qualifying impairment "for the past 14 years" coupled with the fact that in his case, such heart condition resulted in surgery, constitutes "evidence of disability." *See* Pltff's Resp.(D.E. 34–1, p. 6) (citing 45 C.F.R. pt. 84, App. A, Sub. Pt. (A)(3)). However, the law is clear that while heart disease is a qualifying physical impairment, heart disease standing alone, is not necessarily a disability. *Hilburn*, 181 F.3d at 1227–28 (cardiac issues may be a serious medical condition, but such issues do not automatically constitute a disability). To constitute a disability contemplated by the Act, the qualifying impairment must still be shown to "substantially limit a major life activity." *Id.*; *Accord Carroll v. Neumann*, 204 F.Supp.2d 1344, 1355 (S.D.Fla.2002)(granting summary judgment for employer because employee failed to establish a genuine issue of material fact regarding whether he is disabled, despite having had five life-threatening cardiac episodes); *Reis*, 442 F.Supp.2d at 1245–48 (holding that plaintiff's congenital heart disease does not limit a major life activity, including functioning in extreme temperatures, standing, lifting or working).

**1352**

■ For purposes of the instant motion, the Court accepts Plaintiff's allegations and testimony that during the relevant time period Plaintiff's heart condition resulted in Plaintiff experiencing some shortness of breath, dizziness and fatigue, such that he was unable to walk for long distances, spend long periods of time in the heat, or climb a ladder; that these limitations were made known to Defendant in May 2008; and that upon such disclosure, Defendant accommodated Plaintiff by allowing Plaintiff to avoid these limiting activities.[19] The Court also has found that despite his shortness of breath and resulting limitations, with the accommodations Plaintiff admits Defendant provided, Plaintiff was able to perform the essential functions of his job.[20]

Nonetheless, even accepting these facts as true, Plaintiff has still failed to specify a major life activity in which he is substantially limited and has offered no evidence of such a limitation. Plaintiff has alleged he suffers from shortness of breath, dizziness and fatigue, which results in him being unable to walk for long distances, spend long periods of time in the heat, or climb a ladder, but he has not demonstrated that these symptoms have restricted any of his major life activities. Thus, while these alleged symptoms can be expected to have an adverse impact on Plaintiff's life, there is no evidence that they have limited him in any major activity of his life. *See Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000)(affirming grant of summary judgment against ADA plaintiff who suffered from seizures, diabetes, mi-

graines, and depression because though her ailments "have had an adverse impact on [plaintiff's] life, there is no evidence that they have limited her in a major life activity.").

Nor has Plaintiff shown that his heart condition and subsequent surgery requiring the implantation of a pacemaker has substantially limited his performance of the major life activities of walking, performing manual labor and/or working. While the record is replete with conclusory statements about Plaintiff's limitations, there has been no hard evidence provided in support. Further, Plaintiff's own testimony concerning the activities he performed both while employed by Defendant and currently, are inconsistent with Plaintiff's claim that his impairments result in a substantial limitation on his major life activities. Thus, while the Court does not doubt that Plaintiff's impairments have had an adverse impact on his life, there is no *evidence* that they have substantially limited him in any major life activity so as to constitute a disability as defined by the Act. Indeed, based on the post-surgery letter from Plaintiff's treating physician releasing Plaintiff to return to work on a full-time basis with "no restrictions," the opposite appears to be the case.

Significantly, Plaintiff's own conduct and deposition testimony belie the claim that he is disabled as that term is defined in the Act. The record establishes that at all times material to the instant motion, in addition to working full time, Plaintiff performed all of the daily activities necessary to care for himself including driving, cooking, walking, dressing, and assisting his girlfriend around the house.[21] As for work

19. *See generally,* Pltff's Resp. to Mtn. (D.E. 34–1), Pltff's Objection to Def's Stmt. of Undisputed Facts (D.E. 34), and Carper Depo., pp. 87–92.

20. *See* Carper Depo., pp. 87–92. "It wasn't the physical—[requirements of Plaintiff's

job]—that I couldn't do; I couldn't be out in the heat. I got short of breath very quickly...." Carper Depo., pp. 87–92.

21. *See generally* Def's Stmt. of Undisputed Facts in Support of Summ. Judgmnt. and citations therein to Exhibits and Deposition

related activities, Plaintiff testified he did office work, supervised employees, rode with technicians, visited the job site and for short periods of time went out in the heat and climbed ladders occasionally.[22] Currently Plaintiff is able to take care of himself, visit grocery stores and retail establishments, go out to eat, cook and bake, visit the casino and work in a job that takes him outside the office to meet delinquent taxpayers.[23] As demonstrated by his own conduct and sworn testimony, no rational trier of fact could find Plaintiff to be substantially limited in any major life function. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial).

As expected, Plaintiff's level of activity was reduced during the brief 18–day leave he took from Defendant's employ to recover from his heart surgery. Nonetheless, the record is clear that during that time, Plaintiff visited the grocery store, cooked and frequented the casino.[24] Since Plaintiff's activity levels were minimally reduced for only a brief duration, with little or no long-term or permanent impact, they do not, as a matter of law, constitute the sort of limitation that rises to the level of a disability as contemplated by the Act. *See Sutton*, 185 F.3d at 1209 (temporary inability to work is not permanent or long-term impairment and does not constitute evidence of disability covered by the Rehabilitation Act); *Huff v. UARCO, Inc.*, 122 F.3d 374 (7th Cir.1997)(temporary condition not disability under the ADA).

Perhaps the greatest evidence of the non-limiting nature of Plaintiff's heart condition comes in the form of Plaintiff's own

treating physician who, upon signing a release form authorizing Plaintiff to return to work on December 8, 2008, just 2 1/2 weeks after his surgery, stated that Plaintiff could return to work full-time with "no restrictions." As Defendant correctly observes, such a brief leave of absence combined with a release to return to work on a full-time basis with no restrictions "is not the 'permanent or long-term limitation' contemplated by [the regulations and case law]." *Cooke v. Advanced Fire Prot. Servs.*, 2010 WL 148462, *3 (N.D.Fla. Jan. 13, 2010)(noting "short" two-week leave of absence "is not the 'permanent or long term limitation' contemplated by the Act").

The law is well-established that "conclusory allegations without specific supporting facts have no probative value." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985). In the absence of any record evidence to support Plaintiff's conclusory allegation that he is disabled based on a substantial limitation in one or more major life activities, the Court concludes that summary judgment in Defendant's favor is warranted on this claim.

**2. *No Evidence Of A Record Of Impairment***

 Similarly, Plaintiff has not and can not possibly establish a "disability" under the Act based on having a "record of such impairment," as provided by Sub–Section (B) of § 12101(2).[25] Medical records do not, by themselves, create a record of a disability. *Reis*, 442 F.Supp.2d at 1248–1249 (a record of hospitalization does not create a record of an impairment for purposes of § 12101(2)(B)). Federal regulations define the "record of impairment"

---

Transcripts of Plaintiff and Plaintiff's girlfriend, Janis McCord (D.E. 28 ¶¶ 28, 29 and 30)

**22.** *See Id.* at ¶¶ 4, 25, 26, 27 and 30.

**23.** *See Id.* at ¶ 29.

**24.** *See* Pltff's Depo. pp. 101–102 and Exh's attached thereto; McCord Depo. p. 40.

**25.** 42 U.S.C. § 12101(2)(B).

provision to mean that an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (1996). The intent of this provision is to ensure that individuals are not discriminated against because of a history of a disability. *Hilburn*, 181 F.3d at 1229. The "record of impairment" provision may be satisfied if the employer relies on a record, such as a medical or employment record, that indicates that an individual has or has had a substantially limiting impairment. *Id.* "Thus, regardless of whether Plaintiff is proceeding under a classification or a misclassification theory, the 'record of impairment' standard is satisfied *only if he actually suffered a physical impairment that substantially limited one or more of his major life activities.*" *Id.* (emphasis added).

Since Plaintiff has failed to support his claim that he is disabled by virtue of a substantial limitation in one or more of his major life activities, Plaintiff's "record of impairment" claim also must fail. *Cribbs v. City of Altamonte Springs*, 2000 WL 33310904, *4 (M.D.Fla. Oct. 18, 2000)(granting summary judgment in favor of employer on plaintiff's disability discrimination claim and noting "the 'record of impairment' standard is satisfied only if [plaintiff] actually suffered a physical impairment that substantially limited one or more of his major life activities.")(citing *Hilburn*, 181 F.3d at 1229); *Palmer v. Albertson's*, 2010 WL 785652, *5 (N.D.Fla. March 3, 2010)(in granting summary judgment in favor of employer on employee's disability discrimination claim, court noted that "the record of impairment definition, ... requires an individual to have actually suffered an impairment that substantially limited one or more of the individual's major life activities" and since plaintiff's impairment was already found not to have been substantially limiting with respect to

Plaintiff's major life activities, Plaintiff was precluded from relying on the "record of impairment" definition to establish his claimed disability under the Act).

■ Summary judgment on this aspect of Plaintiff's case is warranted for the additional reason that the record is devoid of any evidence that Defendant was even in possession of Plaintiff's medical records, let alone relied on any such record of Plaintiff's impairment in making its decision to terminate him. The only "record" of impairment was in the form of one doctor's note generated approximately two months before Plaintiff's surgery explaining that Plaintiff would be undergoing surgery 2 months hence and another note from Plaintiff's treating physician provided to Defendant after Plaintiff's surgery authorizing Plaintiff's return to work on a full-time basis with "no restrictions." To succeed on a "record of impairment" theory, it is necessary to prove that the "record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." *Hilburn*, 181 F.3d at 1229. Clearly, neither of the two doctor's notes mentioned above support the view that Plaintiff's impairment, although requiring surgery, is "substantially limiting" as that term is defined in the Act. The first note refers only to a temporary limitation soon to be remedied by surgery, and the second note effectively states the exact opposite of what Plaintiff claims, namely, that Plaintiff is "not" disabled as he is free to return to full-time work with "no restrictions."

### 3. *No Evidence That Defendant Regarded Plaintiff As Disabled*

■ To establish a disability under this final definition under the Act, Plaintiff must demonstrate that the Defendant regarded him as disabled. 42 U.S.C. § 12101(2)(C). "An employer may regard

an individual as having a disability by: (1) mistakenly believing that an individual has a physical impairment that limits one or more major life activities; or (2) mistakenly believing that an actual, nonlimiting impairment substantially limits one or more of the person's major life activities." *Palmer,* 2010 WL 785652, *5 (*citing Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). The purpose behind the "regarded as" definition is to combat negative and archaic stereotypes about the abilities of individuals with physical or mental impairments. *Michios v. Rooms to Go Miami, Corp.,* 1997 WL 813004, *2 (S.D.Fla. Nov. 13, 1997). "The focus of the inquiry is on how the decisionmakers perceived the Plaintiff and whether their perception was a motivating factor in the employment decision." *Rivera v. Orange County School Bd.,* 2000 WL 33176009, *6–8 (M.D.Fla. May 2, 2000).

In order to overcome summary judgment on a "regarded as" theory of disability Plaintiff must produce sufficient evidence for a reasonable trier of fact to conclude that Defendant perceived him, however erroneously, as having an impairment that substantially limited one or more of his major life activities. *Sutton,* 185 F.3d at 1208 (to establish a prima facie case of disability discrimination based on "regarded as" theory of disability, plaintiff must be able to show that, as with a real impairment, the perceived impairment is "substantially limiting" and significant). In this regard it is not enough for Plaintiff to show that Defendant perceived him as temporarily disabled or unable to perform a single particular job. Rather, Plaintiff has the burden of proving that his perceived impairment extended beyond his one particular job to a class of jobs or a broad range of jobs in various classes and that it extended long-term into the future. 29 C.F.R. § 1630.2(j)(3)(I); *Sutton,* 527 U.S. at 491–93, 119 S.Ct. 2139; *Palmer,* 2010 WL 785652, *5.

From the evidence of record it is abundantly clear that Defendant never regarded Plaintiff as substantially limited in any major life activity, and Plaintiff has not produced a scintilla of contrary evidence. Instead, Plaintiff relies on Defendant's alleged knowledge of his impairment and accommodations it extended to him. *See* Plaintiff's Response (D.E. 34–1, p. 8). But the law is clear that the mere fact that an employer is aware of an employee's impairment and offers accommodation is insufficient to demonstrate either that the employer regarded the employee as disabled or that said perception caused the adverse employment action. *See Sutton,* 185 F.3d at 1209 ("The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled"); *Rivera,* 2000 WL 33176009, *7 (same).

Indeed, Defendant's actions evidence Defendant's belief that Plaintiff could perform his job with accommodation. Thus, in *Scarbrough v. Columbus Consol. Government,* 2011 WL 2938503, *6 (M.D.Ga. July 19, 2011), the plaintiff, who claimed that her employer incorrectly "regarded" her as an alcoholic, argued that her employer's requirement that she sign a self-referral agreement demonstrated that the employer regarded her as an alcoholic incapable of performing her job. The court rejected this argument, holding "to the contrary" the evidence "rebuts any such perception" on the employer's part because far from treating the employee as disabled, such accommodation shows that the employer perceived the plaintiff as perfectly capable of performing her job as long as she received accommodation. *See also Nyrop v. Independent School Dist.,* 616 F.3d 728, 736 (8th Cir.2010)(employer's

allowance of accommodations does not establish that the employer regarded the employee as disabled).

Moreover Defendant's representatives, Held, Morrison and McDaniel, testified that they did not regard Plaintiff as having a disability,[26] and it is undisputed that Plaintiff returned to work after his surgery with a note from his physician authorizing him to resume his duties on a full-time basis with "no restrictions." Thus, viewing the record in the light most favorable to Plaintiff, there is no genuine issue of material fact on the issue of whether Defendant regarded Plaintiff as having a disability as defined by the Act. Accordingly, summary judgment is mandated on Plaintiff's claim that Defendant "regarded her as disabled."

### E. *Denial Of Requested Accommodation*

Plaintiff's failure to accommodate claim rests entirely on Plaintiff's conclusory assertion that Defendant "never entered into any dialogue to reasonably accommodate Plaintiff." Pltff's Compl. (D.E. 1–2, ¶ 23). As Defendant correctly observes, because Plaintiff was not disabled under the Act, Defendant was not obliged to enter into a dialogue with Plaintiff regarding any accommodation. *See Cooke*, 2010 WL 148462, *4 ("[D]efendant's failure to provide only identified 'accommodation' does not establish an ADA violation because Plaintiff was not an individual with a disability as defined in the Act.").

Furthermore, even assuming such an obligation to accommodate did exist, summary judgment would still be warranted because Plaintiff has failed to identify, let alone establish, any request for accommodation which Defendant failed to provide. The undisputed facts of record establish that sometime prior to his surgery, Plaintiff requested and received an accommoda-

tion from Defendant permitting him to refrain from climbing ladders and spending long periods in the heat. Additional undisputed record evidence reveals that Plaintiff requested and was granted a leave of absence to undergo surgery, and that he returned from that leave with a note from his treating physician which indicated "no restrictions." These are the only accommodations referenced in the pleadings and the record before the Court. Accordingly, there are no facts in dispute on the Plaintiff's claim of denied accommodation, and summary judgment in favor of Defendant on this claim is warranted.

### IV. *CONCLUSION*

Viewing the record evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff is not disabled within the meaning of the Act on any of the three bases that he advances here: there is no evidence of a disability; there is no evidence of a record of disability; and, no evidence of a perceived disability. Thus, Plaintiff's failure to make out his *prima facie* case of disability discrimination mandates the entry of summary judgment for Defendant on this claim. Similarly, the Court finds that as a matter of law Plaintiff was not entitled to an accommodation, and that even if he was so entitled, he has failed to adduce sufficient evidence from which a trier of fact could conclude that Plaintiff requested an accommodation from Defendant that was denied. Accordingly, summary judgment in favor of Defendant on Plaintiff's failure to accommodate claim is likewise mandated

Based on the above and foregoing, and on the inability of Plaintiff to offer even an inference that he is disabled within the meaning of the Act or that Defendant failed to offer him an accommodation to which he was entitled, it is hereby,

---

26. *See* Def's Stmt. of Undisputed Facts in Support of Summ. Judgmnt. (D.E. 28, ¶ 24).

**ORDERED AND ADJUDGED** that Defendant, TWC Services, Inc.'s Motion for Summary Judgment (D.E. 27) is **GRANTED.** A separate order entering final judgment and closing this case shall follow. The Order scheduling Trial Date is **VACATED** and the trial currently scheduled to commence on October 18, 2011 is **CANCELLED.** The Clerk is instructed to deny all pending motions as moot.